**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Baal Perazim Wellness & Health | ) | Case No. 26 16251 |
| Services, PC, *et al.*, | ) | Case No. 26 16260 |
| | ) | Case No. 26 16248 |
| Debtors.[1] | ) | |
| | ) | (Joint Administration Requested) |
| | ) | |
| | ) | Hon. David D. Cleary |
| | ) | |

**DECLARATION OF JACKIE GUZZETTA IN SUPPORT OF DEBTORS' CHAPTER 11 PETITIONS AND CERTAIN FIRST DAY MOTIONS**

I, Jackie Guzzetta, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true to the best of my knowledge, information, and belief:

1. I am the Chief Operating Officer and Chief Financial Officer of the business operated by Baal Perazim Wellness & Health Services, PC ("Baal P.C."), Baal Perazim Wellness, Inc. ("Baal Inc."), and Solara Therapy, Limited ("Solara," and collectively with Baal P.C. and Baal Inc., the "Debtors").

2. I am responsible for the Debtors' day to day operations and finances, including payroll, banking, billing, and vendor payments. I am familiar with the Debtors' day to day operations, business affairs, and books and records.

3. On September 30, 2026 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal taxpayer identification number, are: (a) Baal Perazim Wellness & Health Services, PC (0576), Case No. 26 16251; (b) Baal Perazim Wellness, Inc. (6945), Case No. 26 16260; and (c) Solara Therapy, Limited (8079), Case No. 26 16248.

Northern District of Illinois (the "Court"). Solara's case is No. 26 16248, Baal P.C.'s case is No. 26 16251, and Baal Inc.'s case is No. 26 16260 (collectively, the "Chapter 11 Cases"). None of the Chapter 11 Cases is a case under subchapter V of chapter 11 of the Bankruptcy Code. To enable the Debtors to minimize the adverse effects of the chapter 11 filings, the Debtors are requesting various types of relief in "first day" motions (collectively, the "First Day Motions") that the Debtors filed with the Court.

4. I submit this declaration (this "Declaration") in support of the Debtors' chapter 11 petitions and the First Day Motions. Except as otherwise indicated, all facts set forth in this Declaration are based on my personal knowledge, my review of the Debtors' books and records and other documents, information provided to me by the Debtors' employees and professionals, or my opinion based on my experience and knowledge of the Debtors' operations and financial condition. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

5. This Declaration describes the Debtors' business and the circumstances surrounding the commencement of the Chapter 11 Cases and confirms the facts set forth in the First Day Motions.

## I. BACKGROUND

### A. The Debtors' Business

6. The Debtors operate an outpatient health care practice in Chicago under the name "Wellness Homes of Chicago" from four leased locations: 2835 N. Sheffield Avenue, Suite 500; 3416–3420 S. Halsted Street; 3916 N. Broadway; and 1823 W. 47th Street. The Debtors' principal office is located at 2835 N. Sheffield Avenue, Suite 500, Chicago, Illinois 60657. Maurice A. Brownlee ("Brownlee") founded the practice to provide accessible, low barrier care

to communities affected by health disparities. The practice acquired NorthStar Health in 2020, began operating as Wellness Homes of Chicago in 2022 and added Wellness Home Behavioral Health, a certified mental health center, in 2023.

7. Baal P.C. is a Georgia professional corporation formed on December 15, 2004. Baal P.C. is registered to do business in Illinois. Baal P.C. was formed as The Behavioral Health Advisory Group, LLC, changed its name to Baal Perazim Wellness and Health Services, LLC effective January 15, 2020 and converted to a professional corporation effective February 10, 2020. Baal P.C. does business as Wellness Home at Northstar Healthcare and Wellness Homes of Chicago. Baal P.C. provides primary care, HIV care, a long acting injectable medication program, intravenous therapy, and psychiatric care, including transcranial magnetic stimulation therapy using a BrainsWay system.

8. Baal Inc. is a Georgia nonprofit corporation formed on May 26, 2014. Baal Inc. is registered to do business in Illinois. Baal Inc. was formerly known as Baal Perazim Youth Foundation, Inc. and changed its name effective October 11, 2018. Baal Inc. does business as Wellness Home Behavioral Health Services and provides behavioral health services. Baal Inc. has no shareholders or members.

9. Solara is an Illinois corporation incorporated on March 28, 2025. Solara does business as Solara Physical Therapy. Solara is not currently operating and the last day of work for Solara's physical therapists was September 18, 2026.

10. Brownlee holds all of the outstanding equity securities of Baal P.C. and Solara. Brownlee is the chief executive officer of Baal P.C. and Baal Inc. and the president of Solara.

11. Baal P.C. and Baal Inc. are actively treating patients. The Debtors' patients include chronically ill patients, including patients with HIV disease, who depend on the Debtors for ongoing treatment and medication.

12. As of the Petition Date, the Debtors employ approximately ninety four employees (collectively, the "Employees"): seventy seven at Baal P.C., fourteen at Baal Inc., and three at Solara.

13. Substantially all of the Debtors' revenue consists of payments for patient services from commercial insurers and government health care programs. The commercial insurers include Aetna and Blue Cross and Blue Shield of Illinois. The government programs include Medicare and Medicaid. Patients also pay the Debtors by credit card through Square, CardPointe, and CareCredit.

14. The Debtors' primary assets consist of their accounts receivable, cash, and medical and office equipment and supplies. As of the Petition Date, the Debtors held approximately $68,000 in their bank accounts.

**B. Reasons for the Chapter 11 Filings**

15. Between February 2025 and July 2026, the Debtors entered into a series of merchant cash advance agreements and one commercial loan, each repaid through fixed weekly debits from the Debtors' bank accounts. The agreements in the Debtors' records include the following:

| Funder | Agreement or Funding Date | Purchase Price or Amount Funded | Approximate Amount Claimed |
|---|---|---|---|
| Itria Ventures LLC | February 17, 2025 | $900,000 | $832,534.74 |
| Itria Ventures LLC | January 30, 2026 | $900,000 | Included above |
| LG Funding LLC | March 24, 2026 | $450,000 | $253,646.00 |
| BizFund, LLC | June 2, 2026 | $450,000 | $729,183.22 |
| BizFund, LLC | August 17, 2026 | $290,000 | Included above |
| JRG Funding LLC | July 13, 2026 | $190,000 | $210,000.00 |

| | | | |
|---|---|---|---|
| TruPath Lending LLC | July 13, 2026 | $190,000 | $210,000.00 |
| Fiji Funding | July 28, 2026 | $153,450 | $163,985.25 |

16. Several of these agreements name more than one Debtor. By September 2026, the funders' debits totaled approximately $92,600 per week. In July 2026 alone, the funders debited $188,516.16 from Baal P.C.'s Bank of America account. Based on the Debtors' monthly cash analysis, the Debtors operated at a shortfall of approximately $398,000 per month with these debits, compared to a surplus of approximately $12,000 per month without them.

17. The weekly debits consumed the cash the Debtors needed for payroll and operating expenses. By late September 2026, the Debtors could not fund a full payroll. For the payroll with a check date of September 25, 2026, most employees received only half of their net pay. The payroll taxes for that payroll were not paid.

18. On September 28, 2026, M10 Land Investments, LLC, the landlord of the 1823 W. 47th Street premises, served Baal Inc. with a notice of default and five day notice demanding $22,596.43, consisting of $21,520.41 in rent and $1,076.02 in late fees.

19. In short, the weekly debits left the Debtors without the cash to pay their employees and their rent. The Debtors filed the Chapter 11 Cases to stop the debits, preserve their operations and patient care, and pursue a restructuring or sale of their business.

## II. FIRST DAY MOTIONS AND APPLICATION

20. On October 2, 2026, the Debtors filed four First Day Motions seeking relief intended to maintain the Debtors' business operations and preserve value for the Debtors, their stakeholders, and parties in interest. Each First Day Motion is crucial to the Debtors' restructuring efforts and to the health and wellbeing of their patients.[2]

[2] Capitalized terms not expressly defined herein have the meaning given to such terms in the relevant First Day Motion.

21. I have reviewed each of the First Day Motions and the exhibits attached to each and discussed them with the Debtors' counsel. I incorporate by reference the factual statements set forth in the First Day Motions. I believe that the relief sought in each of the First Day Motions is tailored to the needs of the Chapter 11 Cases and is critical to the Debtors' ability to achieve their goals in the Chapter 11 Cases. Specifically, I believe that the relief sought in each of the First Day Motions is necessary because: (a) it will allow the Debtors to maintain baseline operations following the commencement of the Chapter 11 Cases; (b) it will enable the Debtors to operate in chapter 11 with minimal disruption to their business operations and patient care; and (c) it will maximize the value of the Debtors' business. I believe that if the Court grants the relief requested in the First Day Motions, the prospect of achieving these objectives, to the maximum benefit of the Debtors' estates, creditors, and other parties in interest, will be substantially enhanced. Accordingly, I believe that the Court should grant each of the First Day Motions.

**A. Debtors' Motion to Direct Joint Administration of Related Chapter 11 Cases**

22. The Debtors filed a motion [Docket No. 8] (the "Joint Administration Motion") requesting that the Chapter 11 Cases be jointly administered, for procedural purposes only, under Baal P.C.'s case, No. 26 16251.

23. The Debtors are affiliates under common ownership and management. Brownlee owns all of the outstanding equity securities of Baal P.C. and Solara and leads all three Debtors. The Debtors share a principal office, management, and staff. From time to time, Baal P.C. transfers funds to Baal Inc. and Solara to cover their operating expenses. In July 2026, Baal P.C. transferred approximately $255,000 to Baal Inc.'s Bank of America accounts and approximately

$14,000 to Solara. The Debtors also share many of the same creditors, including the MCA funders, who claim that more than one Debtor is liable to them under the same agreement.

24. Joint administration will allow the Debtors to file a single set of motions, notices, and orders for matters that affect all three cases and will reduce the cost and administrative burden of the Chapter 11 Cases for the Debtors, the Court, and creditors. Joint administration will not affect the substantive rights of any creditor. Each Debtor will continue to file its own schedules, statements, and monthly operating reports. I believe that the relief requested in the Joint Administration Motion is in the best interests of the Debtors' estates, their creditors, and all other parties in interest.

**B. Debtors' Emergency Motion for Entry of an Order (A) Authorizing the Debtors to Pay and Honor Certain Prepetition Wages, Benefits, and Other Employee Obligations, (B) Authorizing Financial Institutions to Honor and Process Related Checks and Transfers, and (C) Granting Related Relief**

25. The Debtors filed a motion [Docket No. 9] (the "Wages Motion") seeking authority to pay and honor certain prepetition obligations owed to or for the benefit of the Employees and to continue those obligations in the ordinary course of business. No employee is a party to a collective bargaining agreement or similar labor agreement.

26. The Employees provide the patient care on which the Debtors' business depends. I believe that the vast majority of the Employees rely on their compensation and benefits to pay their daily living expenses and provide for their households. Most Employees received only half of their net pay on September 25, 2026. If the Debtors cannot pay the Employees in full on the next payroll, on October 7, 2026, I believe that many of them will leave. The Debtors would then be unable to staff their clinics or continue treating their patients.

27. As of the Petition Date, the Debtors estimate that approximately $169,000.00 in Wage Obligations remained unpaid. The Debtors also estimate that approximately $31,713.52 in

Payroll Taxes, $13,355.89 in Deductions, $70,000 in employee insurance premiums (health, dental, vision, life), $16,000.00 on account of the Workers' Compensation Program, and $3,600.00 in Payroll Processor Fees were unpaid as of the Petition Date.

28. Brownlee and his daughter, Consuela Sheppard, are Employees. As of September 28, 2026, Brownlee was owed $87,099.99 in unpaid wages. The Wages Motion does not seek authority to pay any prepetition amount to any insider, other than approximately $9,000.00 in salary to Brownlee for services provided and to Consuela Sheppard. I am also an Employee. I am owed prepetition Wage Obligations in excess of the $17,150 limit of section 507(a)(4) of the Bankruptcy Code, which will not be paid in excess of the limit set forth therein.

29. To avoid disruption to patient care, maintain employee morale, and minimize the personal hardship to the Employees, the Debtors seek authority to pay and honor certain prepetition claims relating to, among other things, wages, salaries, commissions, bonuses, paid time off, payroll processing fees, federal and state withholding taxes and other amounts withheld, insurance benefits, workers' compensation insurance, and expense reimbursements. The Debtors also seek authority to continue these obligations in the ordinary course of business.

30. For the foregoing reasons and those set forth in the Wages Motion, I believe the relief requested in the Wages Motion is in the best interests of the Debtors' estates and their creditors.

**C. Debtors' Emergency Motion for Entry of an Order (A) Authorizing the Debtors to Continue Using Their Existing Bank Accounts, Business Forms, and Cash Management System, (B) Directing the Banks to Block Postpetition Merchant Cash Advance Debits, and (C) Granting Related Relief**

31. The Debtors filed a motion [Docket No. 12] (the "Cash Management Motion") seeking authority to continue using their existing Bank Accounts, Business Forms, and Cash

Management System and an order directing the Banks to block postpetition debits by the MCA Funders.

32. The Debtors maintain a Cash Management System in the ordinary course of business to collect, transfer, and disburse the funds generated by their operations. The Cash Management System consists of seven Bank Accounts at Bank of America, N.A., Fifth Third Bank, National Association, and Byline Bank, as set forth in the Cash Management Motion. Each Debtor maintains at least one Bank Account in its own name.

33. Importantly, Medicare, Medicaid, managed care organizations, commercial insurers, and patients pay the Debtors by electronic funds transfer or card payment into the Bank Accounts. The Debtors fund payroll by wiring funds from the relevant Bank Account to Paycom, which pays the Employees of all three Debtors by direct deposit. The Debtors record each Debtor's receipts, disbursements, and transfers between the Debtors separately in QuickBooks.

34. Given the nature of the Debtors' operations and to ensure that care continues to be provided to their patients, I believe that any disruption to the Cash Management System would have an immediate adverse effect on the Debtors' business and operations, to the detriment of their estates, creditors, and other parties in interest. The Debtors' payors send payment by electronic funds transfer to the accounts on file with them. Changing those accounts would require new enrollment paperwork with each payor and would delay the Debtors' collections.

35. On the Petition Date, the Debtors' counsel sent letters to Bank of America and Fifth Third that gave notice of the Chapter 11 Cases, revoked any prior authorization for the MCA Debits and asked each bank to place an ACH debit block on the MCA Funders. On October 1, 2026, JRG Funding LLC debited $7,000.00 from a Bank Account. I am not aware of

any other MCA Debit after the Petition Date. Without an order directing the Banks to block the MCA Debits, the Debtors must detect each unauthorized MCA Debit and return it within the time the ACH rules allow.

36. Bank of America and Fifth Third are both authorized depository institutions. Solara has a bank account at Byline Bank. Although Byline Bank is not an authorized depository for Region 11, given that Solara is not currently operating and the balance in Solara's Byline Bank account is approximately $2,911.88, Solara requests authority to keep open this account in order to recover receivables moving forward.

37. Accordingly, to minimize the disruption caused by the Chapter 11 Cases and to maximize the value of the Debtors' estates, I believe that the Debtors should be authorized to continue to use their existing Cash Management System during the Chapter 11 Cases and that the Banks should be directed to block the MCA Debits.

### D. Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection, and (III) Scheduling a Final Hearing

38. The Debtors filed a motion [Docket No. 10] (the "Cash Collateral Motion") seeking authority to use cash collateral in accordance with the Budget. In order to continue operating in the Chapter 11 Cases, the Debtors require immediate use of their cash and the proceeds of their receivables, in which the Asserting Parties may assert an interest. Absent such relief, the Debtors do not have sufficient unrestricted cash or other financing available to operate their business and administer the Chapter 11 Cases.

39. The Debtors prepared the Budget, which sets forth the Debtors' projected receipts and disbursements, on a combined basis, for the period from the Petition Date through October 30, 2026. The Budget projects beginning cash of $68,000, total receipts of $828,000, and total

disbursements of $857,500, including $470,000 for payroll and payroll taxes, $137,000 for employee insurance benefits, and $16,000 for the professional fee reserve, leaving ending cash of $38,500 for the week ending October 30, 2026. The Budget does not provide for any payment to an Asserting Party on account of a prepetition claim. I believe that the Budget reflects the expenses the Debtors must pay to continue operating during the period it covers.

40. As adequate protection, the Debtors propose to grant each Asserting Party replacement liens on postpetition property of the same type as its prepetition collateral, to the same extent, validity, and priority as any valid prepetition lien, limited to any decrease in value resulting from the use of cash collateral. The Debtors will also maintain insurance on their property and operations. The Debtors will use cash collateral to provide patient services. Those services generate new receivables of the same type as any Asserting Party's prepetition collateral.

41. If granted, the relief requested in the Cash Collateral Motion will enable the Debtors, among other things, to: (a) pay the Employees on October 7, 2026; (b) purchase the medications, supplies, and laboratory services that their patients require; and (c) maintain the continuity of their operations and the value of their estates.

42. For the foregoing reasons and those set forth in the Cash Collateral Motion, I believe the relief requested in the Cash Collateral Motion is in the Debtors' best interests and will enable them to preserve and maximize the value of their estates.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 5, 2026

Jackie Guzzetta